Gbtntats

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

UNITED STATES OF AMERICA,

        v.                            10 Cr. 336 (LAK)

PAUL TATE,

           Defendant.

-------------------------------x

                                  New York, New York
                                  November 28, 2016
                                  2:40 p.m.

Before:

                  HON. LEWIS A. KAPLAN,

                                  District Judge

                          APPEARANCES

PREET BHARARA
      United States Attorney for the
      Southern District of New York
BY:  NIKETH VELAMOOR
      Assistant United States Attorney

DAVID M. ZINN
BETH A. STEWART
      Attorneys for Defendant

Gbtntats

```
 1              (Case called)
 2              THE COURT:  Good afternoon.
 3              I hope everybody has worked off the turkey.
 4              Mr. Zinn.
 5              MR. ZINN:  Yes, your Honor.
 6              THE COURT:  OK.  Have you and your client had the
 7    presentence report for the necessary period and both read it?
 8              MR. ZINN:  We have, your Honor.
 9              THE COURT:  And Mr. Tate, have you yourself read the
10    presentence report?
11              THE DEFENDANT:  I have, your Honor.
12              THE COURT:  You may be seated.
13              It will be sealed and made available to counsel in the
14    event of an appeal.
15              Are there any unresolved objections to the presentence
16    report?
17              MR. ZINN:  No, your Honor.
18              We had a few minor clarifications which I think are
19    not objectionable to my knowledge.
20              THE COURT:  Mr. Velamoor?
21              MR. VELAMOOR:  No, your Honor.
22              THE COURT:  Thank you.
23              I adopt the presentence report and the guideline
24    computation and range that it contains.
25              I have received in relation to the sentencing a
```

Gbtntats

1    sentencing memorandum on behalf of the defendant and the

2    presentence report.  Is there anything else of which I ought to

3    be aware?

4              MR. VELAMOOR:  Nothing from the government, your

5    Honor.

6              MR. ZINN:  No, your Honor.  We're happy to submit on

7    the record, your Honor.

8              THE COURT:  You're happy to?

9              MR. ZINN:  Submit on the record before the Court.

10             THE COURT:  I'm not following.  You don't want to be

11   heard the issue of sentencing.

12             MR. ZINN:  I am happy to be heard, your Honor, if you

13   have questions, but I'm also happy to submit on the papers.

14             I don't have much to add to what we have submitted to

15   the Court.

16             THE COURT:  I understand.

17             MR. ZINN:  I can speak for a few minutes about

18   Mr. Tate, if that will be helpful to the Court.

19             THE COURT:  No.  I'm familiar with the materials.

20             It is up to you.

21             MR. ZINN:  Let me say a few words, your Honor.

22             Thank you.

23             THE COURT:  All right.

24             MR. ZINN:  I would like to talk a little bit just

25   about Mr. Tate personally.  I hope this came across in the

Gbtntats

1   papers and through the letters that were submitted to the

2   Court, but he is a very modest, unassuming man.  He lives a

3   fairly straightforward life.  He basically worked and took care

4   of his family.  He's married, been with his now wife for 17

5   years.  He has two young children, a five-year-old and a

6   seven-year-old.  They we live a simple life on the Isle of

7   Mann.

8           He is not a flamboyant guy.  He's not the typical

9   person you would expect to see before the Court, particularly

10  in a gambling case.  I think it was put well in the report that

11  your Honor received that, but for him having taken a job at

12  PokerStars he would not be before the Court.

13          Insofar as his job is concerned, your Honor, as is

14  clear from the papers that were before the Court, he was a very

15  minor participant in the offense.  He's differently situated

16  than the others that are before the Court in the sense that he

17  is not a senior executive at one of these companies.  He was

18  not a founder of one of the companies, and, most importantly,

19  not a decision maker.

20          He came into the company in 2006.  He entered in

21  basically a tech job.  That is his background, with experience

22  on the Internet, and then after a couple of years was assigned

23  to deal with some U.S. processing issues.  That's what brings

24  him before the Court.

25          The PSR has recommended, and obviously we concur your

Gbtntats

Honor, and you saw that in our submission, that the Court

impose a noncustodial sentence of time served on Mr. Tate.

That's within the guideline range.  He has suffered already

significant consequences, and this has been a very difficult

process for him.  Obviously he lost his job a couple of years

ago.  He has a record now, a felony record in the United

States, that he will have to confront for the rest of his life.

He's in his 40s now.  This has had an impact on him and his

family as well.

He came here voluntarily this year on his own, where

there was no extradition available to the United States,

because he wanted to put this behind him and he wanted to come

before the Court and do that.  That's why he's here.  He's been

here since July.  We have had, as your Honor is aware, an

ongoing dialogue with the U.S. Attorney's Office that

culminated in his plea.

The only other point I would make, your Honor, on the

request for the noncustodial sentence of time served is his

status as a non-U.S. citizen puts him in a different position

than others relative to sentencing.  If he were incarcerated in

the case, as we pointed out in the papers, there are

restrictions on where he could serve time, and we do have a

concern, your Honor, that if he is incarcerated that the

process of exiting the United States could be very confusing

and time consuming and difficult.  He could be sort of in the

Gbtntats

1   immigration limbo world for sometime that would cause him to be

2   incarcerated for a period of time that might even be longer

3   than any sentence the Court might impose.  I hope the Court

4   would take that into consideration in its deliberations about

5   the case as well.

6           We submitted to the Court some statistics that reflect

7   how other courts in this district have treated similarly

8   situated defendants who have entered a plea to a 1955 and all

9   of those courts have entered probationary sentences, and we

10  would ask your Honor to enter a sentence of time served here.

11          THE COURT:  Thank you.

12          MR. ZINN:  Thank you, your Honor.

13          THE COURT:  Mr. Tate, you have a right to speak before

14  your sentence.

15          Is there anything you would like to say.

16          THE DEFENDANT:  Yes, your Honor.  I very much regret

17  the choices I made.  It is wrong to violate the laws of another

18  country, and there can be no excuses for doing so.  I am aware

19  of the seriousness of this.

20          I wish to sincerely apologize to the Court and to my

21  family.  I came to New York several months ago to address this

22  matter, and I hope that the Court will consider my genuine

23  remorse in considering my case.

24          THE COURT:  Thank you.

25          THE DEFENDANT:  That is it, your Honor.

Gbtntats

```
1            THE COURT:  Mr. Velamoor?

2            MR. VELAMOOR:  Your Honor, unless the Court has

3   questions, which I am, of course, happy to answer, the

4   government believes a guideline sentence is appropriate.

5            THE COURT:  I am just probably oddly curious, but

6   curious nonetheless, as to understand why the United States

7   could not have extradited Mr. Tate, which I imagine is wrapped

8   up in what the legal status of the Isle of Mann is in the

9   United Kingdom or its association with the United Kingdom.  It

10  has no bearing on what I am going to do here, but I am curious.

11           MR. VELAMOOR:  That's correct, your Honor.

12           Our office explored the issue of whether or not U.K.

13  or the Isle of Mann would extradite for the charges at issue in

14  this case.  We explored that issue with the Department of

15  Justice in Washington and otherwise.  It was made quite clear

16  to us that for these offenses there would not be any kind of

17  extradition of any defendants to the U.S.  Therefore, I think

18  for defendants abroad we've tried to work to obtain their

19  surrender, which is what we were able to do in this case.

20           THE COURT:  Do I understand correctly that the reason

21  extradition was unavailable was because the charged offense was

22  not within the treaty between the United States and the United

23  Kingdom and not because of something having to do with the

24  peculiar legal status of the Isle of Mann?

25           MR. VELAMOOR:  Yes.  That is my understanding.  I must
```

Gbtntats

1    say I was not personally involved in that in the office, but

2    from what I have been told, yes, it was because of the nature

3    of the offense.

4              THE COURT:  All right.  Thank you for that.

5              Mr. Tate, please rise for the imposition of sentence.

6              I accept that you are entirely remorseful for this.

7    Given the fact that you couldn't have been extradited for this

8    offense, you deserve a world of credit for coming back here and

9    facing the music as it were.

10             I see no point in a sentence of incarceration at all.

11   In consequence, it is the judgment of this Court that you be

12   committed to the custody of the Attorney General of the United

13   States for a term of imprisonment of time served, that you

14   forfeit to the United States the sum of $119,000 on the terms

15   and in the manner set forth in the consent preliminary order of

16   forfeiture that was filed in this case on October 19, and you

17   shall pay the mandatory special assessment of $100.

18             I advise you that, to whatever extent you haven't

19   waived it, you have the right to appeal from the judgment

20   imposing this sentence.  If you wish to appeal, you must file a

21   written notice of appeal with the clerk of the district court

22   no later than 14 days after the date on which judgment is

23   entered, which could be as soon as tomorrow.

24             In the event you wish to appeal and you can't afford

25   to pay the fees necessary to do so, you have the right to apply

Gbtntats

1    for permission to appeal as a poor person.  If such an

2    application were granted, you would be permitted to appeal

3    without payment of the fees, and if you couldn't afford a

4    lawyer, a lawyer would be provided for you at government

5    expense.

6             You may be seated.

7             Now, Mr. Velamoor, there may be some unresolved

8    counts.  If so, I am not aware of them.  Would you remind me,

9    please.

10            MR. VELAMOOR:  Yes, there are some unresolved counts,

11   and we would move to dismiss those counts.

12            THE COURT:  That motion is granted.

13            In terms of the mechanics here, I assume, Mr. Tate is

14   on bail, is that right?

15            MR. VELAMOOR:  He is on bail.  Yes.  That's correct.

16            THE COURT:  The terms of the bail are?

17            MR. VELAMOOR:  The terms of the bail include a

18   substantial cash deposit I believe of $1 million.

19            MR. ZINN:  That's correct, your Honor.

20            MR. VELAMOOR:  We will obviously cooperate to have

21   that money returned because my understanding is the defendant

22   has paid the forfeiture amount already.  So he's entitled to

23   the return of his bail.

24            THE COURT:  Is there any reason why I shouldn't on the

25   record here now exonerate the bail?

Gbtntats

1              MR. VELAMOOR:  I don't believe there is any reason.  I

2      also think that should include the return of his passport so

3      that he can return back to the Isle of Mann.

4              THE COURT:  Bail is terminated.  The bond is

5      exonerated.  And Mr. Tate's passport shall be returned to him

6      as promptly as possible.

7              Anything else?

8              MR. VELAMOOR:  Nothing further from the government,

9      your Honor.

10             Thank you.

11             THE COURT:  Counsel?

12             MR. ZINN:  No, your Honor.  Thank you, your Honor.

13             THE COURT:  Thank you.  Have a good trip back,

14     Mr. Tate.

15             THE DEFENDANT:  Thank you, your Honor.

16             (Adjourned)

17

18

19

20

21

22

23

24

25